IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| RAY PEACOCK, on behalf of himself and on behalf of all other Alabama citizens and entities, in the State of Alabama similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE CINCINNATI INSURANCE CO., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) CASE NO. 3:08-CV-455-WKW [WO] ) ) ) ) |

## **MEMORANDUM OPINION AND ORDER**

Before the court is a motion to remand (Doc. # 9), filed by Plaintiff Ray Peacock ("Mr. Peacock"). The motion is accompanied by a memorandum of law and a request for an award of attorney's fees and expenses. (Doc. # 10.) The Cincinnati Insurance Company ("Cincinnati"), which is the defendant, filed a response in opposition. (Doc. # 11.) Mr. Peacock replied (Doc. # 12), and Cincinnati filed a surreply (Doc. # 13). For the reasons set forth below, the motion to remand is due to be granted, but fees and expenses will not be awarded.

## **I. FACTS AND PROCEDURAL HISTORY**

On April 18, 2008, Mr. Peacock filed a class action complaint in the Circuit Court of Tallapoosa County, Alabama, on behalf of himself and others similarly situated. The lawsuit arises from Cincinnati's alleged practice in Alabama of imposing and collecting premiums

for uninsured/underinsured ("UM") motorist coverage in excess of Cincinnati's liability limits.

Mr. Peacock alleges that he purchased a multi-vehicle personal automobile insurance policy from Cincinnati that covered six of his vehicles. (Compl. ¶ 23.) He further avers that his daughter, an insured under the policy, was involved in an automobile accident and sustained bodily injuries from the fault of an uninsured motorist, but that Cincinnati denied him and his daughter the benefits of stacking more than three UM coverages, notwithstanding "that UM premiums were paid on additional vehicles." (Compl. ¶ 24.)

Because Alabama law only permits an additional two coverages to be stacked on his multi-vehicle personal automobile insurance policy,[1] Mr. Peacock alleges that any UM coverage issued by Cincinnati on his fourth, fifth and sixth automobiles was "unnecessary, illusory, and of no additional benefit" to him. (Compl. ¶ 22.) Mr. Peacock seeks to recover the premiums paid for UM coverage on his fourth, fifth and sixth vehicles and to represent all other Cincinnati policyholders in the state of Alabama who have paid "for additional UM coverage on more than three (3) vehicles covered under a multi-vehicle insurance policy issued by [Cincinnati]." (Compl. ¶ 25);(*see also* Compl. ¶ 10 ("[T]he damages sought by Plaintiff and the proposed class members constitute restitution or disgorgement of monies paid for the unnecessary and illusory UM coverage described herein.").)

---

[1] By statute, all automobile insurance polices in the state of Alabama must include UM motorist coverage unless rejected by the insured, and an insured may stack up to two additional UM coverages on a single multi-vehicle policy. Ala. Code § 32-7-23.

Mr. Peacock's claims are for breach of contract, fraudulent misrepresentation, fraudulent suppression and concealment, and unjust enrichment. (Compl. at 14-18.) The jurisdiction section of the complaint contains the following limitation on damages:

> Plaintiff, individually and on behalf of the putative class, makes no claims pursuant to federal law and further make [sic] no claims which would give rise to any federal cause of action. Plaintiff's claims are based solely upon Alabama state law. Additionally, Plaintiff on behalf of himself and putative class members, does not make any claim for relief, including both equitable relief and monetary damages, in excess of $74,500.00 in the aggregate for Plaintiff or any class member. Under no circumstances would the total amount of relief, including both equitable relief and monetary damages, exceed $74,500.00 in the aggregate for Plaintiff or each class member. Even if Plaintiff and class members recovered under each count of the complaint, the total recovery for Plaintiff and putative class members would not exceed $74,500.00 in the aggregate for each Plaintiff or class member and the total damages for the entire class would not exceed $4,995,000, in the aggregate. Plaintiff, on behalf of himself and the putative class, states that the total damages for the entire class, including equitable relief and monetary damages are $4,995,000 or less, and under no circumstances will the total damages, including equitable relief and monetary damages, for Plaintiff and the entire class, in the aggregate, exceed $4,995,000.

(Compl. ¶ 10 (uppercase bold typeface omitted).)

On June 10, 2008, Cincinnati filed a timely notice of removal under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), in the United States District Court for the Middle District of Alabama. (Not. Removal (Doc. # 1).) In its notice of removal, Cincinnati asserts that the court has jurisdiction over this action because the requisite diversity of citizenship exists, the putative class comprises at least 100 members, and the claims total more than $5 million, notwithstanding Mr. Peacock's attempt to limit damages. (Not. Removal at 1-2 & n.1.) Cincinnati attaches to its notice of removal the original complaint,

the circuit court civil cover sheet, and an affidavit from Steven W. Leibel ("Mr. Leibel"), Cincinnati's vice president of personal lines. Mr. Leibel attests that the total number of Cincinnati multi-vehicle personal automobile insurance policies in effect where more than three vehicles were covered on a multi-vehicle policy was 1,705 in 2006 and 1,661 in 2007. (Leibel Aff. at 1-2 (Ex. 3 to Not. Removal).) Mr. Peacock responded to Cincinnati's notice of removal on July 10, 2008, by filing a motion to remand the case to the Circuit Court of Tallapoosa County, challenging the propriety of removal based on a failure of Cincinnati to prove that the amount in controversy exceeds $5 million.

## II. STANDARD OF REVIEW

Federal courts have a strict duty to exercise the jurisdiction conferred on them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). However, "[f]ederal courts are courts of limited jurisdiction." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Thus, with respect to cases removed to this court pursuant to 28 U.S.C. § 1441, the law of the Eleventh Circuit favors remand where federal jurisdiction is not absolutely clear. "[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns*, 31 F.3d at 1095.

## III. DISCUSSION

Cincinnati removed this action pursuant to 28 U.S.C. § 1441(b) on the basis that this court has subject matter jurisdiction under CAFA, 28 U.S.C. § 1332(d). Pursuant to CAFA,

federal courts have original jurisdiction over class actions provided that three prerequisites are met: (1) the aggregate of the claims of individual class members exceeds $5 million, exclusive of interest and costs, § 1332(d)(2), (6); (2) there are at least 100 members in the proposed plaintiff class, § 1332(d)(5)(b); and (3) there is minimal diversity requiring only that one member of the plaintiff class be diverse from one defendant, § 1332(d)(2). *See also Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007), *cert. denied*, 128 S. Ct. 2877 (2008).

Mr. Peacock concedes that minimal diversity is present and that the putative class has at least 100 members. (Pl. Mem. of Law at 5 (Doc. # 10).) Only the first element is at issue.

Where the complaint alleges unspecified damages, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence. *Lowery*, 483 F.3d at 1209-10. However, where as here the complaint contains a limitation establishing that the amount in controversy falls below the jurisdictional minimum, the removing party "must prove to a legal certainty" that the plaintiff's claims "must exceed" the jurisdictional amount. *Burns*, 31 F.3d at 1095. The removing defendant's burden is a "heavy one," but not an impossible one. *Id.* For instance, under the legal certainty test, "the removing defendant "could remain in federal court if he showed that, if plaintiff prevails on liability, an award below the jurisdictional amount would be outside the range of permissible awards because the case is clearly worth more than [the jurisdictional amount]." *Id.* at 1096.

To determine the amount in controversy in removal actions, a court can consider only the notice of removal and accompanying documents, *Lowery*, 483 F.3d at 1213-14, at least for jurisdictional challenges brought within thirty days of removal, *id.* at 1218. Those documents must "unambiguously establish federal jurisdiction," *id.* at 1213, and the court must remand unless the jurisdictional amount "is either stated clearly on the face of the documents before the court, or readily deducible from them," *id.* at 1211. "The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." *Id.* at 1215.

A removing defendant can predicate jurisdiction either on the initial pleading, or "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). When a defendant bases removal on a document other than the initial pleading, three specific conditions must be satisfied. There must be "(1) 'an amended pleading, motion, order or other paper,' which (2) the defendant must have received from the plaintiff (or from the court, if the document is an order), and from which (3) the defendant can 'first ascertain' that federal jurisdiction exists." *Lowery*, 483 F.3d at 1215 n.63 (quoting 28 U.S.C. § 1446(b)). The general rule is that evidence "contemplated" by 28 U.S.C. § 1446(b) is evidence "received from the plaintiffs."[2] *Id.* at 1221. Hence, "the defendant's appraisal of the amount in controversy . . .

---

[2] The very narrow exceptions to that rule, *see Lowery*, 483 F.3d at 1215 n.66, are not argued here.

6

will ordinarily not provide grounds for his counsel to sign a notice of removal in good faith." *Id.* at 1215 n.63; *see also Stroh v. Colonial Bank, N.A.*, No. 4:08-cv-73, 2008 WL 4831752, at *2 (M.D. Ga. Nov. 4, 2008).

In support of his motion to remand, Mr. Peacock asserts generally that Cincinnati has not met its burden of establishing federal jurisdiction because it "ignores the fact that [Mr. Peacock] . . . has expressly limited any recovery to an amount below $4,995,000" and "fails to offer any acceptable evidentiary support of its assertion that the damages in this case exceed $4,995,000." (Pl. Mot. Remand at 4.) The specific arguments for and against removal are threefold. The court addresses each in turn.

First, Mr. Peacock argues that Cincinnati's reliance on Mr. Leibel's affidavit as establishing the amount in controversy is not permitted under *Lowery* because the document "was created by [Cincinnati], rather than received from [Mr. Peacock]." (Pl. Mem. of Law at 6.) Cincinnati counters that the Eleventh Circuit permits consideration of affidavits prepared and submitted by a defendant in removal actions. (Def. Resp. at 8 (Doc. # 11).) Cincinnati's argument is premised primarily on the Eleventh Circuit's decision in *Miedema v. Maytag Corp.*, 450 F.3d 1322 (11th Cir. 2006), but without mention of *Lowery*.

In *Miedema*, the defendant removed to federal court under CAFA, relying on a declaration submitted by one of the defendant's employees as proof that the $5 million jurisdictional minimum was met. 450 F.3d at 1325. The Eleventh Circuit agreed with the district court that the analysis set out in the declaration was factually incomplete and could

not satisfy the defendant's burden of showing that the amount in controversy exceeded $5 million. *Id.* at 1331. This part of the *Miedema* opinion, however, is of dubious precedential value in light of *Lowery*. *Lowery* held that "under § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff – be it the initial complaint or a later received paper – and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." *Lowery*, 483 F.3d at 1213. "This inquiry is at the heart of a case . . . in which the plaintiffs challenge removal by filing a timely motion to remand under § 1447(c)." *Id.* (internal footnote omitted); *see also id.* at 1218. Importantly, *Lowery* preempted any argument that its holding conflicted with *Miedema*:

> [O]ur reading of §§ 1446(b) and 1447(c) does not conflict with our recent decision in *Miedema* . . . . In *Miedema*, the application of § 1446(b) was not before the court. The district court in *Miedema* had considered evidence that would likely fall outside the constraints of § 1446(b), but we concluded that, even if all the evidence the district court looked to could properly be considered, the defendants had failed to carry their burden. . . . Because the evidence was insufficient to establish jurisdiction, we never examined § 1446(b) or the propriety of the court's consideration of this evidence.

*Id.* at 1215 n.65.

Here, because Mr. Peacock filed his motion to remand within thirty days of the removal, the court is constrained by *Lowery* in the evidence which it can consider in determining the propriety of removal. The affidavit submitted by Cincinnati is from one of its corporate officers. The information provided by the corporate officer concerns the number of multi-vehicle personal automobile insurance policies Cincinnati had in effect in

8

Alabama over a specified two-year period "where more than three vehicles were covered on a multi-vehicle policy." (Leibel Aff. at 1-2.) There is no indication that this information was received from Mr. Peacock, and it would be illogical to make that assumption given that figures concerning policies sold and in effect in Alabama relate to the very core of Cincinnati's business. Accordingly, the court finds that consideration of Mr. Leibel's affidavit is not permitted under *Lowery*.[3] *See also Thrift Auto Repair, Inc. v. U.S. Bancorp*, No. 1:07-cv-1051, 2007 WL 2788465, at *3 (N.D. Ga. Sept. 21, 2007) (refusing to consider affidavit from defendant, submitted with removal petition, on the basis of *Lowery* and rejecting defendant's reliance on *Miedema*).

Second, Cincinnati argues that jurisdiction in this court is established by multiplying the number of potential class members by the jurisdictional minimum of Alabama circuit courts. Half of Cincinnati's equation, however, relies on the premise that the number of potential class members can be established by the figures set out in Mr. Leibel's affidavit. (Leibel Aff. ¶ 3.) As discussed above, *Lowery* precludes consideration of that affidavit for purposes of determining whether Cincinnati meets its burden of establishing that the class claims in the aggregate potentially are valued at more than $5 million. The statistics as to the

---

[3] Cincinnati relies on *Pearson's Pharmacy, Inc. v. Blue Cross & Blue Shield of Ala.*, No. 3:05-cv-1072, 2007 WL 3496031 (M.D. Ala. Nov. 14, 2007), a proposed class action complaint removed pursuant to CAFA, in which this court found that an affidavit submitted by the removing defendant was insufficient to satisfy its burden of establishing the amount in controversy. *Id.* at *2. *Pearson's Pharmacy* is not binding, but, importantly, the plaintiff in that case did not seek to exclude the affidavit on the ground that it was not evidence "received from the plaintiff[]," *Lowery*, 483 F.3d at 1221. (*See, e.g.,* 3:05-cv-1072 (Doc. # 7).) This issue was not raised by the plaintiff in *Pearson's Pharmacy* and was inadvertently overlooked by the court. The plaintiff assumed the affidavit's admissibility, albeit wrongly so, and focused instead on the evidentiary deficiencies of the attestations themselves.

9

class size cannot be gleaned from the complaint; thus, to accept Cincinnati's equation would require the court "to engage in impermissible speculation – evaluating without the benefit of any evidence" the size of the class. *Lowery*, 483 F.3d at 1220. Because a crucial figure in the equation offered by Cincinnati is missing, its argument fails.[4] Having considered the notice of removal and the complaint, which comprises the "limited universe of evidence" appropriate for consideration, *Lowery*, 483 F.3d at 1214, the court finds that these documents fall far short of "unambiguously establish[ing] federal jurisdiction," *id.* at 1213.

Third, Cincinnati's remaining arguments and Mr. Peacock's rebuttal focus on whether Mr. Peacock's limitation on damages is sufficient to prevent removal. (Def. Resp. at 8-11; Pl. Mem. of Law at 13-14.) Cincinnati says that it is not, but it reaches its conclusion by applying an incorrect burden of proof. Cincinnati's arguments for shifting the burden of proof to Mr. Peacock "to prove 'to a legal certainty' that the claim is really for less than the jurisdictional amount in controversy" (Def. Resp. at 11) simply cannot be reconciled with *Evans v. Walter Industries, Inc.*, 449 F.3d 1159 (11th Cir. 2006). It is now settled in this circuit that "CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction." *Id.* at 1164; *see also Lowery*, 483 F.3d at 1208 (observing that the Eleventh Circuit has joined other circuits

---

[4] The court, thus, need not reach the parties' arguments pertaining to the use of the circuit court's jurisdictional minimum as a multiplier or Cincinnati's reliance on the circuit court civil action cover sheet, and nothing in this opinion should be interpreted as having spoken on these issues.

"in following the settled practice of placing the burden of proof on the removing defendant" in CAFA removals).

The legal sufficiency of Mr. Peacock's limitation on damages finds support in the well-established principle that a plaintiff is the "'master of the complaint'" and can plead his claims so as to avoid federal court jurisdiction. *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)). "If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938). Cincinnati does not question that Mr. Peacock is the master of his complaint, nor does it challenge Mr. Peacock's authority to limit the damages claims of putative class members. Removing defendants in at least two other CAFA actions failed to hurdle the legal certainty standard when faced with class damages limitations similar to Mr. Peacock's. *Compare Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 996 (9th Cir. 2007) (alleging in the jurisdiction section of the complaint that "'[t]he aggregate total of the claims pled herein do not exceed five million dollars'"), *and Morgan v. Gay*, 471 F.3d 469, 471 (3d Cir. 2006) (alleging that "'the total amount of such monetary relief for the class as a whole shall not exceed $5 million in sum or value'"), with (Compl. at 6, alleging "that the total damages for the entire class, including equitable relief and monetary damages are $4,995,000 or less, and under no circumstances will the total damages,

11

including equitable relief and monetary damages, for Plaintiff and the entire class, in the aggregate, exceed $4,995,000").

Cincinnati's arguments fail to sustain its burden on removal. Cincinnati points to Mr. Peacock's allegations revealing that his daughter suffered bodily injuries exceeding $60,000 at the fault of an uninsured motorist. (Compl. ¶¶ 6, 24.) Cincinnati then argues that this amount is sought *in addition to* the alleged stipulated damages request of $4,995,000, thus, increasing the damages sought to more than $5 million. (Def. Resp. at 9-10.) Cincinnati's argument, however, assumes too much. Cincinnati has not identified any paragraph in the complaint where Mr. Peacock makes an actual demand for the recovery of this type of relief, and Mr. Peacock argues that there is no such demand.[5] (*See, e.g.*, Compl. ¶ 10 ("[T]he damages sought by Plaintiff and the proposed class members constitute restitution or disgorgement of monies paid for the unnecessary and illusory UM coverage described herein.").) Rather, the more logical reading of the complaint is that the allegations surrounding his daughter's accident are included to give context as to when Mr. Peacock

---

[5] The limitation on aggregate damages for the class made in state court was "subject to the requirements of Alabama Rule of Civil Procedure 11." *Lowery*, 483 F.3d at 1220. Similarly, counsel's representations in his pleadings filed in this court in support of the motion to remand are subject to the strictures of Rule 11(b) of the Federal Rules of Civil Procedure. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC.*, 329 F.3d 805, 808 & n.6 (11th Cir. 2003) (reciting that plaintiff's attorneys were officers of the court and "subject to sanctions under Federal Rule of Civil Procedure 11 for making a representation to the court for an improper purpose"). Counsel for Mr. Peacock expressly represents that his client "limit[s] the amount in controversy to less than the jurisdictional amount," "does not seek or plead damages for bodily injury for himself or any other person" and "does not plead, nor does he seek, any form of damages beyond the restitution of monies paid for the illusory UM coverage described in [his] complaint." (Pl. Reply at 8 (Doc. # 12); *see also* Pl. Mem. of Law at 13-14.) The court finds that counsel's representations are consistent with the complaint's provisions, and there is nothing in the record which persuades the court that counsel's representations are "presented for any improper purpose" or otherwise are made in bad faith. Fed. R. Civ. P. 11(b).

12

learned of Cincinnati's conduct about which he complains in this lawsuit. Moreover, Mr. Peacock's cap on damages is in the "aggregate" for the "entire class" and encompasses "the total damages," both equitable and monetary, for "the entire class." (Compl. at 6.) The cap makes no exception for additional damages and, thus, contradicts Cincinnati's argument that damages *in addition to* the cap are sought.

Cincinnati also points out that theoretically under Alabama law a jury could award, and the class could accept, more than $5 million in damages even with the express limitation in the complaint. The defendant in *Burns* raised, but the court rejected, a substantially identical argument, holding that it was insufficient to demonstrate to a legal certainty that the amount in controversy was satisfied.[6] *See* 31 F.3d at 1097 (adopting defendant's "approach would allow state rules of procedure to determine when federal jurisdiction existed").

Based on the foregoing, the court finds that Cincinnati has not met its burden of establishing to a legal certainty that the aggregate of the claims of the individual class

---

[6] The Third Circuit's admonitions in *Morgan*, however, are worth noting. *See* 471 F.3d. at 476-78. There, the court "admonish[ed] that a verdict in excess of the demand could well be deemed prejudicial to the party that sought removal to federal court when the party seeking remand uses a damages-limitation provision to avoid federal court." *Id.* at 477. The Third Circuit pointed out "the potential availability of judicial estoppel" should the plaintiffs later seek an award exceeding $5 million and further

> caution[ed] . . . that the plaintiffs in state court should not be permitted to ostensibly limit their damages to avoid federal court only to receive an award in excess of the federal amount in controversy requirement. The plaintiff has made her choice, and the plaintiffs in state court who choose not to opt out of the class must live with it.

*Id.* at 477-78 (internal footnote omitted).

members meets the jurisdictional minimum of $5 million. Accordingly, Mr. Peacock's motion to remand is due to be granted.[7]

### IV. CONCLUSION

For the foregoing reasons, it is ORDERED that:

(1) Mr. Peacock's motion to remand (Doc. # 9) is GRANTED;

(2) This case is REMANDED to the Circuit Court of Tallapoosa County, Alabama;

(3) the Clerk of the Court is DIRECTED to take appropriate steps to effect the remand; and

(4) Mr. Peacock's request for his costs and attorney's fees is DENIED.

Done this 18th day of December, 2008.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE

---

[7] In his motion to remand, Mr. Peacock contends that the court should award him costs, expenses and attorney's fees pursuant to 28 U.S.C. § 1447(c), arguing that Cincinnati "lack[ed] any objectively reasonable basis for removing this matter." (Pl. Mem. of Law at 16.) The award, however, is discretionary, and, having reviewed the record as a whole, the court does not find that Cincinnati's removal was so "lacking in merit as to justify such an award." *Sapp v. AT&T Corp.*, 215 F. Supp. 2d 1273, 1279 (M.D. Ala. 2002). It was not objectively unreasonable "to test the bounds of *Lowery* and CAFA in this class action setting." *C & E, Inc. v. Friedman's Jewelers, Inc.*, No. CV 107-122, 2008 WL 64632, at *3 (S.D. Ga. Jan. 4, 2008).